## THE STATE v. THOMAS B. SMITH, Appellant.

**Division Two, May 20, 1913.**

1. **RECEIVING STOLEN GOODS:** Information: Essential Elements of Larceny. An information charging defendant with having received stolen goods, knowing them to have been stolen, should allege all the essential elements of larceny, since he has the right to join issue with the State on the fact of the larceny and to show that the goods were not stolen.

2. ———: ———: ———: Description of Goods. "Thirty thousand San Felice cigars of the value of fifteen hundred dollars, one case of dry goods of the value of six hundred dollars," is a sufficient description to apprise defendant what stolen property he is charged with having received.

3. ———: ———: ———: Intent: Knowledge of Owner. The information need not allege that defendant received the stolen goods with the intent to deprive the owner of the same, nor that he knew the goods were stolen from any particular person.

4. ———: ———: ———: Name of Owner. The information charging defendant with having received stolen goods, knowing them to have been stolen, may allege the person or corporation in whose actual possession they were when stolen, to be the owner. In this case the goods were stolen from a railroad company, while in transit, and the information charged said company to be the owner, and that is held sufficient, though the railroad company was not the actual, but only the constructive, owner.

5. **CROSS-EXAMINATION: Interest in Prosecution.** It is not improper for the State, on cross-examination of one of defendant's character witnesses, to ask him if he had not sought to influence the prosecution in defendant's favor. Anything tending to show bias on the part of the witness may be drawn out on cross-examination.

6. **RECEIVING STOLEN GOODS: Larceny or Embezzlement?** The check clerk of a railroad freight office, who falsely remarks and reconsigns to a fictitious person goods belonging to another, and then through a conspirator has them reshipped to defendant, who receives them, is guilty of larceny, not embezzlement.

7. ———: **Possession of Other Stolen Goods: Scienter.** It is proper to permit the State to produce testimony to the effect that a defendant, charged with receiving stolen goods, knowing them to have been stolen, had in his possession other articles of stolen property, where the evidence of the other offenses shows a common plan or scheme for receiving stolen goods so closely related to the offense in question that proof of them tends to establish the latter. Guilty knowledge is the gravamen of the offense, and the *scienter* may be proven by other previous similar acts.

8. ———: ———: **Intermixed with Offense Charged.** Where the other acts of receiving stolen goods are so mixed and intermingled with that particular act for which defendant is on trial, as to render it impossible to give full proof of that act without at the same time showing the others, the evidence of any or all of them is admissible.

9. ———: **Instruction: Erroneous Definition of Feloniously.** A definition of "feloniously" in an instruction as "wickedly, and against the admonition of the law, that is, wickedly and unlawfully" is incorrect; but it is unnecessary to either define or use the word in instructions which point out the facts which constitute the felony charged, and hence its incorrect definition was harmless.

10. ———: ———: **Casual Statements: Cautionary.** When verbal statements of defendant casually made in ordinary conversations, or on occasions more or less remote from the time of the offense charged, are produced in evidence, a cautionary instruction, because of the liability of witnesses to forget or a lack of a serious appreciation of their import, should be given, as a corollary to the instruction upon the weight to be attached to such verbal statements. But where they were not made casually, but at the time a portion of the stolen goods were found in defendant's possession and to officers and other persons who had a peculiar interest in the matter, it is not error to refuse such an instruction.

Appeal from Jackson Criminal Court.—*Hon. Edward E. Porterfield,* Judge.

AFFIRMED.

*R. B. Kirwan* for appellant.

(1) The information filed herein was insufficient in that it was illegal and void. State v. Fink, 186 Mo. 58; State v. Lackey, 230 Mo. 714; State v. Pollack, 105 Mo. App. 278; State v. Stowe, 132 Mo. 208; State v. Barbee, 136 Mo. 440. (2) The court erred in allowing the prosecuting attorney to ask witness if he had not approached another party to bribe the prosecuting attorney. This was highly prejudicial to the appellant and tended to prejudice the jury against him. State v. Conway, 241 Mo. 280; State v. Woolard, 111 Mo. 255; State v. Bobbst, 131 Mo. 338; State v. Jackson, 95 Mo. 652; State v. McGrath, 228 Mo. 428; State v. Clancy, 225 Mo. 659; State v. Lentz, 184 Mo. 243; State v. Moxley, 102 Mo. 393; State v. Shipley, 174 Mo. 517; State v. Hyde, 234 Mo. 256; State v. Fisher, 124 Mo. 460. (3) The prosecuting attorney's conduct and demeanor throughout the trial, his slurring remarks, his referring to appellant herein as a fugitive from justice, that he consorted and lived with a lewd woman in Atchison, Kan., all these tended to prejudice the jury against the rights of this appellant. (4) The evidence submitted to the jury showed that Wedow did not commit larceny but that he committed the crime of embezzlement. Sec. 4554, R. S. 1909; State v. Shermert, 55 Mo. 86; State v. Ware, 62 Mo. 602; State v. Pollock, 105 Mo. App. 277; State v. Fink, 186 Mo. 60; State v. Casey, 207 Mo. 5; State v. Williams, 35 Mo. 231. (5) The court erred in admitting over the objections of the defendant, incompetent, irrelevant, immaterial and prejudicial testimony offered by the State and in excluding competent, relevant and ma-

terial testimony offered by the defendant. State v. Hyde, 234 Mo. 225; State v. Spaugh, 200 Mo. 594; State v. Collins, 181 Mo. 261; State v. Spray, 174 Mo. 576; State v. Bailey, 190 Mo. 280; State v. Goetz, 34 Mo. 89; State v. Boatright, 182 Mo. 51; State v. Parker, 96 Mo. 382; State v. Brown, 188 Mo. 464; People v. Molineux, 168 N. Y. 26, 62 L. R. A. 240; Shaffner v. Commonwealth, 72 Penn. 60. (6) Instruction one given on behalf of the State was erroneous. State v. Witt, 9 Mo. 671; State v. Smith, 37 Mo. 64; State v. Rutherford, 152 Mo. 131; State v. Miller, 159 Mo. 118; State v. Littrell, 170 Mo. 15; State v. Walker, 174 Mo. 523; State v. Fink, 186 Mo. 58; State v. Speritus, 191 Mo. 24; State v. Weatherman, 202 Mo. 10; State v. Richmond, 228 Mo. 366; State v. Sweeten, 75 Mo. App. 134; State v. Pollock, 105 Mo. App. 278. (7) Instruction sixteen offered by defendant ought to have been given. State v. Ghahn, 97 Mo. 693; State v. Motley, 102 Mo. 390; State v. Hendricks, 172 Mo. 668; Commonwealth v. Gray, 4 Gray, 29; Heldt v. State, 20 Neb. 494.

*John T. Barker*, Attorney-General, for the State; *Paul P. Prosser*, of counsel.

(1) The information is in substantial compliance with forms which have received the express approval of this court, and contains every element necessary to charge the offense of knowingly receiving stolen goods. Under the provisions of the statute the gravamen of the offense is receiving stolen goods, knowing the same to have been stolen. The crime denounced by the statute is a substantive offense, and it is immaterial who stole the goods, or from whom they were received, provided they still retain the character of stolen goods. It follows that the information need not state the name of the thief or the person from whom the stolen goods were received. Sec. 4554, R. S.

1909; State v. Guild, 149 Mo. 374; State v. Fink, 186 Mo. 52; State v. Kosky, 191 Mo. 10; 34 Cyc. 521. (2) The verdict is responsive to the issues raised by the information, is abundantly supported by the evidence and is amply sufficient to sustain the judgment. State v. Richmond, 186 Mo. 83; State v. McGee, 188 Mo. 412; State v. Smith, 190 Mo. 728; State v. King, 194 Mo. 484. (3) This case was tried over innumerable objections on the part of counsel for defendant, most of which were directed to the action of the court in admitting evidence of the receipt of other stolen goods by defendant, at times not remote from and under circumstances connected with the receipt in question, for the purpose of showing guilty knowledge. We fully recognize the general rule that evidence of a distinct crime, entirely disconnected with the offense charged in the information, and having no real tendency to prove the same, is incompetent; but as this court has said, "this well-settled rule has its exceptions equally well-settled." State v. Goetz, 34 Mo. 89; State v. Meyers, 82 Mo. 558; People v. Molineaux, 168 N. Y. 293. As one of the essential ingredients of the offense with which defendant was charged is guilty knowledge, and as the evidence showed a common plan or scheme embracing various receipts of stolen goods, so closely related to the receipt in question that proof of the former tended to establish the latter, this case, also, must be held to come within the exception. State v. Wilson, 143 Mo. 346; State v. Hodges, 144 Mo. 53; State v. Phillips, 160 Mo. 506; State v. Spray, 174 Mo. 582; State v. Hyde, 234 Mo. 225, 34 Cyc. 525. (4) While it is true that specific acts of lawlessness or moral turpitude are not admissible for the purpose of proving a bad reputation, yet defendant had tendered his good character as an issue, and it was entirely proper to question his witnesses in that behalf on cross-examination as to defendant's conduct and their information in regard to important

facts in his life, in order to test their truthfulness and to determine the means whereby they had acquired the knowledge upon which their estimate of his character was based. The manner and extent of such cross-examination is a matter largely within the discretion of the trial court. State v. Crow, 107 Mo. 347; State v. McLaughlin, 149 Mo. 33; State v. Parker, 172 Mo. 207; State v. Boyd, 178 Mo. 18; State v. Brown, 181 Mo. 214; State v. Kennedy, 207 Mo. 538. (5) Instruction one required the jury to find every substantive fact charged in the information and declared by the statute (Sec. 4454, R. S. 1909) to constitute the offense for which defendant was on trial, and was therefore unobjectionable. State v. Miller, 93 Mo. 269; State v. Richmond, 186 Mo. 78; State v. Cronin, 189 Mo. 670. We must frankly state that in cases where the verbal statements of the defendant, made casually and in the course of ordinary conversation, form a part of the evidence, and, particularly, where it appears that such statements were made on an occasion more or less remote from the time when they were disclosed, this court has uniformly approved the rule that a cautionary instruction, in the nature of that offered by defendant in the present case, should be given as a corollary to the instruction upon the weight to be attached to such verbal statements. But this court has also held that his rule is not always to be followed, and the present case plainly comes within the exception. The instruction sixteen was not warranted by the evidence, for the reason that defendant's statements "concerning the manner or circumstances attending his possession of the goods mentioned in evidence" were not made "casually" or "in the course of ordinary conversation." State v. Henderson, 186 Mo. 493.

WALKER, J.—The defendant is charged in an information filed by the prosecuting attorney of Jackson county with receiving stolen goods knowing them

to have been stolen from the owner, the Missouri-Pacific Railway Company.

A trial before a jury resulted in a verdict of guilty and the assessment of the punishment at four years' imprisonment in the penitentiary. From this sentence defendant appeals. Pending the appeal a stay of execution was granted upon the filing of a satisfactory bond.

In March, 1910, a manufacturer of cigars at Lima, Ohio, shipped thirty thousand "San Felice" cigars to Sol H. Cohen, Coffeyville, Kan. This shipment was delivered to the Pennsylvania Railroad at Lima for transportation to St. Louis, whence it was routed via the Missouri-Pacific Railway Company to Coffeyville, Kansas. It was duly received at Kansas City, Missouri, on March 17, 1910, in a New York Central car, from which it was checked out to a Missouri-Pacific car, which was the Coffeyville car on that date. The Coffeyville car arrived at its destination March 18, 1910, with the seals intact, but it was discovered by Cohen upon being notified of the arrival of the goods that the shipment was short three cases of cigars. Cohen not being able to secure any trace of same, made a claim therefor to the company for goods lost in transit.

Subsequent investigation disclosed that upon the receipt of this shipment at Kansas City, it was taken in charge by the local freight agent of the company, who had several assistants. The manner in which the shipments were received by the railway company showed that waybills accompanied each shipment, and when a transfer of freight was to be made from one car to another a check clerk was given the waybill for that car, in order to identify the goods and make a record of the transfer. It was the duty of the check clerk to handle the waybills and check out the packages noted thereon; to direct the truck men which packages were to go to the warehouse and which were to be

taken to other cars; and in case of a transfer to another car, to which particular car the freight was to go.

At the time in question one of the assistants of the local freight agent was a check clerk named Frank Wedow. As check clerk, Wedow had access to the cars and was provided with a paint pot and brush for the marking of freight. Through a corrupt agreement with one Bud Connole, afterwards shown to have a ''police character,'' Wedow and another check clerk named McMahon had been stealing from the railroad company by diverting shipments of freight; Wedow, who testified for the State, stated the manner in which these shipments were diverted; the name of the original consignee would be marked out and the freight reconsigned, usually to some fictitious persons at Leavenworth, Kansas; the freight would then be checked short on the original bill, a new bill of lading would be issued by the check clerks in duplicate in the name of the fictitious consignee, and the freight shipped out as an original shipment from Kansas City. To give such false bills of lading an appearance of genuineness, Wedow would sign them and place them on what was called the ''block stamp,'' to which he had access in the office. He would then deliver a copy of the fraudulent bill of lading to Bud Connole, and file the other in the block office, where another clerk who prepared the waybills would take charge of it. Subsequently the freight would be called for at Leavenworth, by some one representing the fictitious consignee, and it would be shipped back to Kansas City; in a week or two thereafter Bud Connole would turn over to Wedow the money representing the latter's share in the profits of the unlawful enterprise.

In the manner above described, on March 17, 1910, Wedow stole from the Missouri-Pacific Railway Company three cases of the cigars consigned to Sol H. Co

hen, and a case of dry goods. The cigars were reconsigned by Wedow in two shipments, consisting of one case of cigars and two cases of cigars respectively, to "J. A. Long, Leavenworth, Kansas," and the case of dry goods to "J. F. Evers, Leavenworth, Kansas." Bills of lading were issued by Wedow in duplicate showing shipments of one case of cigars and two cases of cigars, and one case of dry goods, as above stated.

From the loading list of the railway company it was shown there was only one car loaded out of Kansas City, Missouri, for Leavenworth, Kansas, on March 17, 1910; and on that date the waybills of the company showed that there were shipments of one case of cigars and two cases of cigars and one of dry goods.

The shipments were duly received at Leavenworth on March 18, 1910, and on the following day one J. W. King, an employee of the defendant, presented the fraudulent bills of lading which had been made out by Wedow covering the three cases of cigars and the one case of dry goods. King surrendered the bills of lading to the cashier of the railway company at Leavenworth, received freight receipts to be delivered to the check clerk, and upon delivery of the goods to him signed his own name to these receipts, as well as the names of the fictitious consignees. Upon receiving the cases of cigars and dry goods King had them transferred from the Missouri-Pacific Railway station to the Burlington railway station where he re-labeled the four cases "household goods," and billed them out as such over the Burlington railway to J. W. King, Kansas City, Missouri. The freight receipt of the Burlington Company showed that this shipment consisted of four boxes of household goods; it was unloaded at Kansas City on March 23, 1910, and the boxes were afterwards delivered to Mat Francis, a negro driver in the employ of the defendant, who signed a receipt therefor and hauled the goods to the

defendants' place of business.  During this time defendant, O. H. Pratt and others were engaged in the business of buying, selling and storing household goods and furniture, and conducting a general auction house under the names of Walnut Street Auction and Storage Company, and Moore Transfer and Storage Company, at Kansas City, Missouri.  By a former employee of defendant it was shown that the latter had handled cases of cigars brought to his storage house by two negro drivers, Mat Francis and Will Myers. These goods were marked with the name of J. W. King, and on the boxes appeared another name which had been partially obliterated with black paint.  A few days thereafter the cigars were loaded into a transfer wagon, and defendant ordered a driver to take them to Friedman's saloon at 5th and Walnut streets in Kansas City.

Frequent claims for goods lost in transit at Kansas City caused the Missouri-Pacific Railway Company to detail one of its special agents named N. P. Kemp to investigate the matter.  Accompanied by an officer with a search warrant he went to defendant's place of business and discovered and identified a number of different articles it was shown had been stolen from Missouri-Pacific cars, including several pianos, several cases of clothing, a case of dry goods, and five cases of San Felice cigars.  They also found the original freight bill, the duplicate of which had been signed by defendant's driver covering the goods alleged in the information to have been stolen, and which King had shipped back from Leavenworth as household goods.

There is also much evidence in regard to the identification of the property found in defendant's storage house other than that described, not necessary to be detailed in this connection.  It was shown that through the instrumentality of Wedow, these goods had been diverted from their original destination and shipped

usually to Leavenworth, Kansas, where in some instances King, under the direction of Connole, would go to Leavenworth, get the goods and reship them to defendant at Kansas City.

The evidence showed that two cases of San Felice cigars had previously thus been stolen from the company in addition to the three described in the information.

Defendant, after making contradictory and inconsistent statements about the other property, admitted to Kemp that he had received the San Felice cigars in the same manner as the other goods. That Bud Connole had given him bills of lading covering these shipments and that defendant had sent a clerk to Leavenworth to obtain the cigars and box of dry goods and ship them back to Kansas City, where he had stored them for Connole, and that he had then bought them from Connole, and afterwards sold the cigars to a saloon-keeper named Friedman. That the case of dry goods was obtained in the same way. Cigars were found in the possession of Friedman with boxes labeled ''Sol H. Cohen, Coffeyville, Kansas.''

On the same morning the search warrant was served on defendant, King, the employee, made a statement in writing which the defendant in a conversation with Kemp admitted to be true. It was to the effect that one of the proprietors of the storage house had given King what purported to be an original bill of lading covering the cases described in the information and had directed the latter to go to Leavenworth, Kansas, present the bills at the Missouri-Pacific freight house, get the freight and mark the boxes ''household goods'' and reship them to Kansas City over the Burlington railway, consigned to King; that on his return to Kansas City he gave the bills of lading to a Mr. Smith or Pratt, associates in business with the defendant.

Following the service of the search warrant, defendant was called into a room at the police station where Connole was under arrest. The inspector asked defendant if that was the man, pointing to Connole, who had brought him the various bills of lading, and defendant said he was.

Connole upbraided the defendant in vile terms for his statements in regard to the matter, and among other things said: "You are a fine one." To which defendant replied: "Well, they searched my place and found the goods there; what could I do?" To which Connole, among other things, said: "You know who I am, you know my reputation, every yellow dog in the North end knows what I am, you knew that these goods were stolen when you bought them. Well, all right, I have consumption, and I won't live long anyway. I won't be here in six weeks." To which defendant replied: "Then why did you bring me into this? Why didn't you take it upon yourself if you are going to die anyway?"

One Hardy, a dealer in second-hand goods, testified that Connole had attempted to sell him some San Felice cigars at defendant's place of business, but they could not agree on the price.

A witness named Clark, who it was shown was also one of the partners or proprietors in defendant's business, stated that they had some cigars in storage on March 23, 1910, and as defendant wanted to buy them from the person who placed them in storage, he, Clark, took some of them around with a view to getting prices on them. Clark was shown a receipt book kept by the house, which he stated ought to show all storage, but he was unable to find where Bud Connole or J. W. King had stored any goods covering the time when the property described in the information was shown to have been in the warehouse.

O. H. Pratt, another partner, testified that he looked after the storage branch of the house, and the

defendant did the buying for the firm; that about March 19, 1910, a party came in and requested him to go to Leavenworth and get four boxes of goods and put them in storage. That the bills of lading covered goods the same as those described in the information. These bills were left at the store for the purpose of getting the goods, but he could not recall the name of the person who brought them; that King was sent to Leavenworth to ship the goods into the house according to the instructions of the man who left the bills of lading; and that the goods were shipped into the house and a receipt issued for them.

Defendant testified at length as to the manner in which he had received the other goods shown to have been identified by the special agent of the railway company as having been stolen. That he had bought the cigars, not exactly from Connole, but from a party that Connole was selling them for, for twelve dollars a thousand. It was shown that these cigars had been sold by the manufacturer to Cohen originally for thirty-one dollars per thousand.

Defendant in his testimony denied that he had ever seen the statement of King, which King had testified he had read over and admitted to be true, at the police station, and denied that he had ever sent anybody to Leavenworth to get any goods. With reference to the character of the goods he handled, defendant said they were all kinds, grocery stocks, cigar stocks, millinery stocks, and even whiskey, "anything," he said, "we can make a dollar on." On cross-examination, defendant said King had worked for him off and on for three or four years, but that he had not seen him for about two weeks before the trial. Defendant again denied that he had ever discussed King's statement with Kemp or acknowledged the same to be true; that Connole had represented himself to the defendant as a scalper engaged in buying and selling all kinds of goods, and all defendant had ever bought

from him was two pianos and the cigars, and that he had sold the cigars to Friedman at seventeen dollars a thousand.

Testimony of an indefinite nature was offered on the part of defendant with reference to the custom of warehouse men in Kansas City in storing goods, tending to show that goods were stored in the name of the person bringing them in, that some houses simply marked the boxes with the number of the storage receipt while others placed on the boxes both this number and the customer's name.

Further testimony was to the effect that while goods were often received by a railroad on bills of lading and stored in the name of the consignee, it was not customary to send such goods out to surrounding towns and ship them back for storage; that in storing goods, warehouse receipts were usually issued, which were surrendered when the goods were taken out of storage.

Five witnesses testified as to defendant's good character.

The defendant assigns as error the overruling of his motion to quash the information; the admission of improper evidence; refusing to admit competent evidence; remarks of the prosecuting attorney in his opening statement to the jury; improper comments by the court on the evidence during the trial; criticisms by the court on the conduct of defendant's counsel during the trial; hostility of the court to the defendant during the trial and in the presence of the jury; giving improper instructions asked by the defendant; improper statements made during the trial by counsel for the State in regard to the defendant; permitting the jury to separate at the noon hour the first day of the trial; because the verdict is not that of a fair and impartial jury and is in violation of the constitutional rights of the defendant.

I.    The information which the defendant alleges is insufficient, omitting the formal parts, is as follows:

"Now comes Virgil Conkling, prosecuting attorney for the State of Missouri, in and for the body of the county of Jackson, and upon his oath informs the court, that Thomas B. Smith, whose Christian name in full is unknown to said prosecuting attorney, late of the county aforesaid, on the 23rd day of March, 1910, at the county of Jackson, State of Missouri, thirty thousand San Felice cigars of the value of fifteen hundred dollars, one case dry goods of the value of six hundred dollars, of the aggregate value of twenty-one hundred dollars, of the goods, chattels and personal property of the Missouri Pacific Railway Company, a corporation, then lately before feloniously stolen, taken and carried away, unlawfully and feloniously did buy and receive, he the said Thomas B. Smith then and there knowing the said goods, chattels and personal property to have been feloniously stolen, taken and carried away as aforesaid; against the peace and dignity of the State."

In criminal charges of the character here involved it is necessary that the information allege all the essential elements of larceny, because as was said by this court in State v. Fink, 186 Mo. l. c. 58, "the defendant who is charged with receiving the stolen goods has the right to join issue with the State upon that material allegation of the larceny, and show that in fact no larceny was committed." If, therefore, the essential requisites to properly charge larceny appear in this information, it is not subject to valid objection.

**Information.**

The stolen property alleged to have been received is described as "thirty thousand San Felice cigars, of the value of fifteen hundred dollars, one case of dry goods of the value of six hundred dollars;" this, as was held in State v. Kosky, 191 Mo. 1, is a suffi-

cient description to apprise the defendant as to what property he was charged with having received.

While the essentials requisite to charge larceny must be pleaded, it is not necessary to allege that the defendant received the goods with the intent to deprive the owner of same (State v. Rich, 245 Mo. l. c. 167); nor is it required that an information, such as is here under consideration, allege that the defendant knew the goods were stolen from any particular person. [State v. Sakowski, 191 Mo. l. c. 647.]

The name of the owner of the property is alleged to be the Missouri-Pacific Railway Company, a corporation. The property stolen was shown to have been in the actual possession of the railway company at the time it was taken; the company, therefore, was the special owner during transit. [State v. Mintz, 189 Mo. l. c. 282; State v. Waghalter, 177 Mo. 676; Storage & Moving Co. v. Transit Co., 120 Mo. App. 414; Chicago & Alton Railroad v. Kansas City-Suburban Belt Railroad, 78 Mo. App. l. c. 259; 6 Cyc. 435.] Under this state of facts, if the stolen property is in the actual possession of a person other than the general owner, the latter still has the constructive possession, and the ownership may properly be alleged and proved either in the special owner having actual possession, or in the general owner having constructive possession. [State v. Lackey, 230 Mo. l. c. 715.]

Tested by the gauge of a charge for larceny, the information is found to contain all the required essentials. We are, therefore, of the opinion that the defendant's motion to quash was properly overruled.

II. Defendant assigns error in the admission and exclusion of testimony.

Defendant introduced witnesses to establish his good character; the State on cross-examination asked one of these if he had not sought to influence the prose-

Cross-Examination. cution in defendant's favor. Counsel for defendant objected on the ground that the inquiry was prejudicial and asked that the court rebuke the prosecuting attorney and discharge the jury. The court sustained the objection to the question, but refused to rebuke the prosecutor or discharge the jury.

The question was not improper. To show interest or bias, a witness may be asked on cross-examination the state of his mind or the nature of his conduct in regard to the party in whose favor or against whom he is testifying. "In such cross-examination great latitude is allowed, the general rule being that anything tending to show bias on the part of the witness may be drawn out, so that anything that shows friendship towards, or enmity against, the party, or an inclination for or against either party, may be shown. Inasmuch as the jurors are the sole judges of the credibility of the witness, any matter that will properly assist the jurors in forming a correct judgment from all of the facts ought to be shown in evidence." [1 Whar. Cr. Ev. (10 Ed.), sec. 488, p. 1011; 40 Cyc. 2489.]

The same rule applies to the cross-examination of witnesses in civil as in criminal cases when it is sought to show bias or prejudice as affecting credibility.

To illustrate, in Czezewzka v. Benton-Bellefontaine Railway, 121 Mo. 201, it is held that the extent to which the temper and disposition of a witness may be shown on cross-examination is largely within the discretion of the trial court. A like rule is to be found in Gordon v. Railroad, 222 Mo. 516, and State v. Steele, 226 Mo. 583.

In State v. Turlington, 102 Mo. 642, it was held competent on cross-examination in a criminal trial to introduce a letter written by the witness to defendant after the offense, tending to show witness's sympathy and partisanship with defendant. And it may be asked

of a witness for defendant on cross-examination if she did not offer the prosecuting witness money if he would go away and not testify against the defendant. [State v. Hack, 118 Mo. 92.]

The rule in regard to the cross-examination of witnesses to test their credibility is thus stated in Stephen's Digest of the Law of Evidence, art. 129, p. 185: "When a witness is cross-examined, he may, in addition" to matters testified in chief, "be asked any questions which tend to test his accuracy, veracity or credibility; or to shake his credit, by injuring his character. To this end the relations of the witness to either of the parties, or to the subject-matter in dispute; his interest, motives, way of life, associations, habits, prejudices and physical defects and infirmities," may be shown if they tend to affect his capacity.

III. There was no evidence of embezzlement as contended by defendant. The act of the check clerk, Wedow, in falsely remarking and reconsigning the **Larceny or** goods in question, was the preliminary **Embezzlement.** step in the larcenous taking of same.

There was no constructive or actual possession of the goods by Wedow to authorize the assumption that his intention to steal them was conceived only after he had remarked and reconsigned them. Having no possession, the conclusion is inevitable that the larcenous taking commenced when he went into the car to check out the goods for reshipment. Then, and then only, his possession began and being wrongful in its inception his act constitutes nothing more than larceny. The subsequent handling of the goods before they were received by the defendant, is tarred with the same crime, thus laying the foundation for the offense charged in the information. The trial court did not err, therefore, in submitting the cause to the jury on the ground that the evidence tended to

show that the goods received by defendant had origi-
nally been stolen and not embezzled.

IV.   The admission of testimony on behalf of
the State that defendant had in his possession other
articles of stolen property was not error.

Guilty knowledge is the gravamen of the offense
of receiving stolen property and the *scienter* may be
proved by other previous similar acts.   [Coleman v.
People, 58 N. Y. 555; Copperman v. People, 56 N. Y.
591; People v. McClure, 148 N. Y. 95.]   In the case
at bar the evidence of other offenses of like charac-
ter showed a common plan or scheme for
the receiving of stolen goods so closely re-
lated to the offense in question that proof
of the former tended to establish the lat-
ter.   Under such a state of facts an excep-
tion is created to the rule against the admission of evi-
dence of other crimes, so as to render the testimony
objected to by defendant admissible; in addition, the
other offenses were so mixed and intermingled with
that at bar as to render it impossible to give full proof
of the one without at the same time showing the com-
mission of the other; under such circumstances evi-
dence of any or all of such offenses is admissible
against a defendant on trial for one of them, which is
itself but a detail of the general criminal scheme.
[Underhill's Cr. Ev. (2 Ed.), sec. 88. p. 157.]   It
was held by the Court of Appeals of New York that
in a prosecution for receiving stolen property, where
young boys had sold hides for a grossly inadequate
price to the defendant, other purchases of hides from
such boys are admissible, even though the hides bought
on other occasions were stolen from different owners
than the owner of the hides concerned in the prosecu-
tion on trial.   [People v. Doty, 175 N. Y. 164.]   The
ruling of the Supreme Court of this State in State v.
Flynn, 124 Mo. 480, has a general bearing to the same

effect. On the trial of an indictment for receiving stolen goods knowing them to have been stolen, it is proper for the prosecution to prove acts of receiving stolen goods from the same person other than those described in the indictment in order to show guilty knowledge on the part of the defendant. [Commonwealth v. Johnson, 133 Pa. St. 293; State v. Habib, 18 R. I. 558.] In each of these cases the original larceny was committed by an employee of the persons alleged in the indictments to be the owners of the property.

Evidence of the receiving by the defendant of other stolen property than that charged in the information, is competent and admissible for the purpose of showing the intent of the defendant with reference to receiving the property which he is charged with having illegally received. [Morgan v. State, 31 Tex. Crim. 1; People v. Rando, 3 Par. Cr. Rep. (N. Y.) 335; State v. Crawford, 39 S. C. 343; Devoto v. Commonwealth, 3 Met. (Ky.) 417; Shriedley v. State, 23 Ohio St. 130.]

As a safeguard to prevent the jury being prejudiced or misled by evidence of other offenses, the trial court in the case at bar gave the following instruction:

"The court instructs the jury that the evidence introduced as to other transactions, if any, is submitted to your consideration for the sole purpose of shedding light (if they have that effect), upon the intent and motive of the defendant in the transaction set out in the information in this case, for which he is now on trial, and for no other purpose."

In view of the foregoing we are of the opinion that the trial court committed no error in admitting evidence of other offenses.

V. A careful examination of the transcript fails to disclose any error in the conduct of the court or

250 Mo.—24

that of the prosecuting attorney to which exceptions were properly saved. The improper remarks

**Conduct of Trial.** made and questions asked witnesses by the counsel for the State in regard to defendant's conduct and reputation while residing in Atchison, Kansas, were, on objections being made thereto, ordered stricken out and the jury directed to disregard same. The frequent motions made by counsel for defendant, coupled with his objections to testimony, that the court discharge the jury, were, in view of the merited rebukes given the prosecuting attorney, sufficient to authorize the overruling of defendant's motions and to prevent the jury being misled or prejudiced. Much must necessarily be left to the discretion of the trial court in such matters and its action should not be disturbed unless manifest prejudice has resulted. [State v. Crow, 107 Mo. l. c. 349.] The court displayed commendable fairness and firmness in keeping overzealous counsel within reasonable bounds, and defendant has no substantial cause of complaint in this regard.

VI. Defendant complains of the giving of instruction numbered one. It is as follows:

"The court instructs the jury that if you find and believe from the evidence in this case that at the county of Jackson and State of Missouri, at any time within three years before the 5th day of June, 1910, the date of the filing of the information in this case, the defendant, Thos. B. Smith, unlawfully and feloniously did buy and receive thirty thousand San Felice cigars and one case of dry goods, and that the same were then and there the property of the Missouri Pacific Railway Company, a corporation and that the said cigars and dry goods had been then lately before unlawfully and feloniously stolen, taken and carried away from the said Missouri Pacific Railway Company and that the said Thomas B. Smith then and there

well knew the said goods and property to have been feloniously stolen, taken and carried away, you will find the defendant guilty.

"And if you believe such property to be of the value of thirty dollars or more, you will assess his punishment at imprisonment in the State penitentiary for not less than two and not more than five years.

"Feloniously, as used in this instruction,' means wickedly, and against the admonition of the law, that is wickedly and unlawfully.''

This instruction should be read in connection with instruction numbered eight and given by the court, which requires the jury to find that some person, other than the defendant, stole, took and carried away the goods described in the information and that defendant bought and received same knowing them to have been stolen. When so read, it is

Instruction: Definition of Feloniously. sufficient. [State v. Sakowski, 191 Mo. 635.] The definition of the word "feloniously" at the close of the instruction as "wickedly and against the admonition of the law, that is, wickedly and unlawfully'' was incorrect, but since no definition of the word was necessary, the mistake was harmless. [State v. Miller, 159 Mo. l. c. 121; State v. Cantlin, 118 Mo. 100.] This court has held in a number of cases that the use of the word "feloniously" is entirely un-necessary in the instructions when they point out as they must of necessity do, if correct, the facts which constitute the felony charged. In State v. Scott, 109 Mo. l. c. 232, it was said: "So, in the instruction complained of here, the word 'feloniously' scarcely has a definable meaning, as used, and could have been altogether omitted without affecting, in the least, the correctness and sufficiency of the instruction." It is not necessary for instructions to use the identical words of a statute or contain the particularity of a criminal charge. [State v. Tobie, 141 Mo. 547.] All that is necessary is that they require the jury in clear, unmis-

takable terms to find the facts as charged in the indictment or information and when so found a conviction of a felony follows as a legal conclusion. [State v. Cronin, 189 Mo. l. c. 670.]

VII.  The refusal of the trial court to give instruction numbered sixteen asked by defendant is assigned as error. It is as follows:

"Although the jury may believe from the evidence that the defendant made statements to various persons concerning the manner or circumstances attending his possession of the goods mentioned in evidence, still if such statements were made casually, in the course of ordinary conversation, they should be considered with great caution because of the liability of witnesses to forget or misunderstand what was really said or intended."

It is true that when verbal statements of a defendant are casually made in the course of ordinary conversation, and form part of the evidence, and it appears that such statements were made on occasions more or less remote from the time when they were disclosed, a cautionary instruction, such as is requested by defendant, should be given as a corollary to the instruction upon the weight to be attached to such verbal statements. This rule, however, is not uniformly followed and the present case is one of the exceptions.

Casual Statements.

The instruction numbered sixteen was not warranted by the evidence; defendant's statements "concerning the manner or circumstances attending his possession of the goods mentioned in evidence," were not made "casually" or "in the course of ordinary conversation;" on the contrary, they were made at various times after a portion of the stolen goods had been found in defendant's possession, and duly identified in his presence, and when the circumstances and requirements of the very occasions themselves de-

manded from him a definite explanation as to the manner in which he had obtained them. One of these occasions was at the time of the service of the search warrant, when defendant's premises were invaded by an officer of the law and the agent of the owner of the stolen goods; another was when he appeared at the police station in connection with the investigation of the theft of the property which had been traced to his possession; and another was two days after the service of the search warrant, when Kemp, the special agent of the owner of the stolen goods, again visited the defendant's place of business for the purpose of recovering certain suits of clothing which defendant and some of his clerks had taken for their personal use out of a stolen shipment, and when defendant actually restored the same to Kemp, as he himself admitted on the witness stand. More than that, these statements on the part of defendant were made to persons who had a peculiar interest in the stolen goods and a right to know the manner and circumstances under which he had received them. One was the agent of the railway company from which the goods had been stolen; another was an officer of the law, charged with the service of the search warrant; and another was an inspector of detectives charged with the duty of apprehending the thieves and bringing them to account. Each corroborated the other that defendant had actually made the statements in evidence, and that such statements were voluntarily made by him, without threat, promise or offer of reward, and before he was under arrest. And above all, the truth of the statements, as detailed to such witnesses, was abundantly corroborated by evidence otherwise adduced.

It is also important to note in this connection that the jury was duly cautioned in other instructions with respect to weighing the evidence; this must be read in connection with the instruction covering the verbal statements of defendant, and that "the facts

and circumstances in evidence should be consistent with each other and with the guilt of the defendant and inconsistent with any reasonable theory of his innocence;'' and that in determining the weight and value to be attached to the testimony of a witness, they should take into consideration, among other things, ''the opportunity the witness had to observe and be informed as to the matters respecting which such witness gives testimony, and the inclination of the witness to speak truthfully or otherwise as to matters within his knowledge.'' And they were directed ''to apply the proven facts of the case to the law as given and to find their verdict accordingly, and not otherwise.'' They were also duly cautioned with respect to weighing the evidence and applying it to the law as laid down by the court. Under such directions we are unable to see how the defendant could have been injured by the refusal of the cautionary instruction. The question of ''the liability of witnesses to forget or misunderstand what was really said or intended'' by defendant was a matter for argument before the jury, rather than a subject for direction by the court.

GANTT, J., speaking for the court in State v. Henderson, 186 Mo. l. c. 493, in regard to the giving of cautionary instructions, after an extensive review of the authorities, reluctantly assents to the giving of such an instruction in that case, but in connection therewith makes these general deductions:

''The functions of the judge and those of the jury are clearly defined in our system of law. It is for the jury to *weigh* the evidence and it is the province of the court to pass upon its competency.

''Whenever the court undertakes to tell a jury what *weight* should be given to *any evidence* to that extent it invades the lines marked out for the jury.

. . .

''The better opinion, upon authority and reason, would seem to be that it is not necessary to give a

cautionary instruction against the statements of a defendant. . . .

"But we have often ruled that, while an instruction may be called for in some cases, and it may even be error to fail to give it, it does not necessarily follow it must be given in every case. Whether such a cautionary instruction should be given must depend on the facts developed in the case."

The present case is clearly within the exception to the rule announced in the Henderson case, and the court did not err in refusing to give the cautionary instruction asked by the defendant.

Finding no prejudicial error in the record, the judgment is affirmed, and the sentence imposed by the trial court is ordered to be executed.

*Brown, P. J.,* and *Faris, J.,* concur.