**STATE of Missouri, Respondent,**

v.

**Martin Karl GOTTHARDT, Appellant.**

**No. 59441.**

Supreme Court of Missouri,
En Banc.

Sept. 13, 1976.

Timothy J. Verhagen, Asst. Atty. Gen., Jefferson City, for respondent.

Roger M. Hibbits, Florissant, for appellant.

FINCH, Judge.

Appellant, charged with murder, first degree, was found guilty by a jury of murder, second degree, with punishment assessed at thirty years in the custody of the Department of Corrections. He appeals, asserting lack of sufficient evidence to make a submissible case, and errors in the admission of evidence and in instructing the jury. We reverse and remand because of error in Instruction No. 6 submitting murder, second degree.

On the night of July 28, 1973, appellant and three other men, James Doeller, Roscoe Lewis and Bruce Freeman Basemore, drove around in Basemore's car drinking beer. At some point appellant requested Basemore to drive to the Norfolk & Western railroad yards to enable him to pick up his work clothes. When they arrived, appellant asked Lewis to accompany him into the yards. When appellant and Lewis returned, they were carrying several heavy brass fittings which belonged to the railroad. At first, Basemore refused to allow the fittings to be put in his car, saying he did not want to get into trouble hauling the stuff. When appellant agreed to give Basemore a split of what he received for them, the fittings were placed in the back seat of the car and the men then proceeded to Doeller's house, driving up into the back yard. The men went into the house and appellant made some calls to try to dispose of the fittings. Basemore told appellant that he wanted at least $50 for his share when the brass was sold, but appellant replied that he wasn't going to get $50. At Doeller's request, they went outside to avoid disturbing Doeller's wife. There the argument continued, Basemore stating to appellant that if he didn't get $50 out of the proceeds, he would take it out of appellant's hide. Appellant jumped from the porch and Basemore then "took off" down the driveway.

Doeller testified that he then got in his car to try to catch Basemore to tell him that there was no sense in fighting and that he should get in his car and go home. Doeller did not find Basemore and when he returned in two minutes or so, he did not see appellant or Lewis.

Basemore came back up the driveway as Doeller was going into his house. Basemore was mad and said he was going to "get" Doeller and the others for this. Doeller replied that he had nothing to do with it and that the dispute was between Basemore and Gotthardt. Basemore, according to Doeller, then began to calm down and got into his car and started the engine. While they were talking, appellant came running back (his back yard was immediately behind Doeller's back yard) carrying a rifle. Doeller thought appellant was going to shoot and tried to grab him, but appellant pushed Doeller down and told him to shut up. Doeller testified that appellant then fired twice into the side window of the Basemore automobile. The car went out of control and ran into a tree, after which appellant shot three or four times through the rear window of the car. Finally, appellant stuck the rifle into the window on the driver's side and fired two more shots.

Lewis testified that when Basemore returned to the Doeller yard, appellant sent him to tell appellant's wife that he wanted his rifle, but that appellant followed him and grabbed the gun. He then ran back to the Doeller yard and started shooting at Basemore's car. Lewis described the shots in about the same manner as had Doeller. In addition, Doeller's wife testified that after hearing some shots and a car crashing into the tree, she came out of the house and saw appellant stick his rifle in the driver's window and fire the last two shots. Doeller then went into his house and called the police.

The witnesses testified that after the shooting, appellant, with Lewis' help, pushed the car back from the tree and guided it down the driveway into the street where they left it. Meanwhile, appellant had his wife take the rifle to the garage of a relative, where it was later recovered by the police.

In addition to introducing the testimony of the three eye witnesses, the State offered evidence that empty shell casings found in the Doeller back yard had been fired in and ejected from the Gotthardt 22

caliber rifle and that two spent 22 slugs, recovered from the body of Basemore, could have been fired from that rifle but were too mutilated for positive identification. Gunshot residue samples, taken from the hands of appellant a few hours after the shooting, tested by neutron activation analysis, indicated that appellant had shot a firearm within a short time before the samples were taken.

In spite of this evidence, including testimony by three eye witnesses, appellant, citing *Lohmann v. Wabash Ry.*, 364 Mo. 910, 269 S.W.2d 885 (1954), argues that we should hold a submissible case was not made on the basis that the eye witness testimony of Doeller, Mrs. Doeller and Lewis was completely contradicted by physical evidence offered by the State. The physical evidence relied on is itemized thus: (1) the spent slugs taken from the body of Basemore were not identified with the Gotthardt rifle; (2) the shell casings, found in the Doeller yard, were not found where they should have been, based on the eye witness accounts of where appellant was when he fired the shots; and (3) the absence of powder fouling on deceased indicated that he was not shot at close range.

We find no merit in this contention. The situations are not analogous. In *Lohmann,* plaintiff's decedent collided with a mail train at a public grade crossing. Plaintiff contended that although the train sounded a bell and a whistle as it approached the intersection, the warning was inadequate because a grease shack, located on defendant's right-of-way, obstructed the decedent's vision and made the intersection unusually hazardous. Plaintiff presented three witnesses who testified that the grease shack obstructed vision so that it would not have been possible for the decedent to see the approaching train until he was on the tracks. Physical evidence such as photographs, actual measurements, and tests clearly showed that the decedent's vision could not have been obstructed by a grease shack. The court wholly disregarded the testimony which was clearly con-

trary to the physical evidence and stated, 269 S.W.2d at 891, that,

> "(i)t has long been the rule in this jurisdiction that where testimony is, beyond any reasonable doubt, contrary to established physical facts or laws and facts of common knowledge, it cannot be accepted as substantial evidence."

By way of elaboration, the court explained that,

> "(w)hat may be seen from a certain place under admitted or undisputed conditions and circumstances, and the view or line of sight under such circumstances is a physical fact, clearly and unequivocally demonstrable by photographic evidence." (Emphasis supplied.)

■ In this case there was no physical evidence which clearly and unequivocally, beyond any reasonable doubt, established that Gotthardt could not have shot and killed Basemore or that the testimony of the eye witnesses could not be accepted as substantial evidence. It is incorrect to say, as appellant asserts, that the spent slugs had no identification with the Gotthardt rifle. Instead of so testifying, the expert who examined them testified that the dimensions of the rifling grooves on the test bullets fired from appellant's rifle and on the two spent slugs were *identical* and that these slugs *could have been fired from appellant's rifle.* He added that the comparison of the striations (the fine lines left on the surface) on the spent slugs with those of the test bullets was inconclusive because those on the spent slugs were too badly mutilated. Hence, he could not say positively that the spent slugs had been fired by that rifle, but that did not amount to evidence that the spent slugs had no identification with the Gotthardt rifle.

■ Nor did the locations in the Doeller yard where the police found the spent casings conclusively disprove the testimony of the eye witnesses that appellant shot and killed Basemore. It perhaps is arguable, as the appellant contends, that they should have been found elsewhere in the yard if the eye witness accounts of where appellant was when he fired are correct, but there was no evidence to clearly and unequivocally establish where the casings would have fallen. However, the evidence did establish that these casings had been fired in the Gotthardt rifle. Comparison under the comparison microscope of the markings thereon with those of test shells clearly so indicated. We conclude that the evidence as to where the casings were picked up was not the kind of undisputed physical evidence referred to in *Lohmann.*

■ Likewise, the absence of evidence of powder fouling on the deceased does not constitute conclusive physical evidence that Gotthardt could not have shot and killed Basemore as the eyewitnesses said he did. This argument necessarily is premised on the assumption that the bullet wounds resulted from shots fired at close range. This is not a valid assumption because the doctor who performed the autopsy found only two gunshot wounds, (one in the left side of his chest and one on top of his head) whereas the evidence disclosed that seven or eight shots were fired from different locations and distances. Which of those shots struck Basemore was not established. Hence, the absence of powder fouling does not demonstrate the impossibility of what the three eye witnesses said occurred.

We conclude that physical evidence did not make unbelievable the eye witness testimony and that the evidence, including their testimony, established a submissible case.

As noted at the outset, we have decided that this case must be reversed and remanded for retrial because of error in Instruction No. 6, the instruction on murder, second degree. We so conclude because the instruction omitted a paragraph which the then current Notes on Use applicable to MAI–CR 6.06, the mandated instruction on murder, second degree, directed should be included.

Instruction No. 6, given by the trial court, was as follows:

> "If you do not find the defendant guilty of Murder in the First Degree, then you must consider whether under

the evidence in this case he is guilty of Murder in the Second Degree. If you find and believe from the evidence beyond a reasonable doubt:

"First, that on July 29, 1973, in the County of St. Louis, State of Missouri, the defendant caused the death of Bruce Freeman Basemore by shooting him, and

"Second, that the defendant intended to take the life of Bruce Freeman Basemore,

then you will find the defendant guilty of Murder in the Second Degree.

"However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the foregoing, then you must find the defendant not guilty of that offense.

"If you do find the defendant guilty of Murder in the Second Degree you will fix his punishment at imprisonment by the Department of Corrections for a term fixed by you, but not less than ten years nor more than life imprisonment."

The foregoing instruction conformed to MAI–CR 6.06 except that it did not contain paragraph Third thereof.[1] That paragraph read as follows:

"Third, that the defendant did not do so in (anger) (fear) (agitation) suddenly provoked by the unexpected acts or conduct of [name of victim]."

At the time this case was tried (April 16, 17, 18 and 19, 1974), Note 2 of Notes on Use following MAI–CR 6.06 provided as follows:

"Paragraph Third must be included where both murder in the second degree and manslaughter are submitted. If manslaughter is not submitted, paragraph Third should be omitted."

■ In this case, the court instructed on manslaughter. Hence, under Note on Use 2, the inclusion of paragraph Third in the murder, second degree, instruction was mandatory.

■ The State argues that appellant cannot complain of this omission on the theory that Instruction No. 6 was offered by appellant and he cannot complain if it was erroneous. There is disagreement between the State and appellant as to whether defendant prepared and submitted Instruction No. 6 and who typed it, but we deem that question immaterial. The well established rule, prior to adoption of MAI–CR, was that the trial court is obligated to instruct on the law of the case, whether requested or not. *State v. Harris,* 313 S.W.2d 664 (Mo.1958); *State v. Jackson,* Mo., 267 S.W. 855 (1924); § 546.070(4), RSMo 1969. That duty included the obligation to instruct correctly thereon. *State v. Webster,* 230 S.W.2d 841, 842 (Mo.1950); *State v. Harris,* 232 Mo. 317, 134 S.W. 535, 536 (1911); *State v. Young,* 99 Mo. 666, 12 S.W. 879, 881 (banc 1890). The adoption of MAI–CR did not change that obligation. MAI–CR was adopted in the hope that it would simplify instructions and make them more understandable for lay juries and that it would assist court and counsel in the preparation for and trial of felony cases. However, it was not intended to and did not alter the existing obligation of the trial court to see that the jury is instructed correctly on the law of the case. Hence, the fact that appellant requested and prepared Instruction No. 6 (and Instruction No. 7 submitting manslaughter), if he did, is of no consequence.

MAI–CR instructions were promulgated pursuant to Rule 20, V.A.M.R. Rule 20.02(e) thereof provides as follows:

"*Violation of Rule—Effect.* Giving or failing to give an instruction or verdict form in violation of this Rule or any applicable Notes on Use shall constitute error, its prejudicial effect to be judicially determined."

The State argues that even if it was error under Rule 20.02(e) to give Instruction No. 6 without including paragraph Third, it was

---

1. The instruction also did not contain paragraph Fourth of MAI–CR 6.06 which is to be included only if the defenses of justifiable or excusable homicide or both are justified by the evidence and are submitted in separate instruc-

tions. As subsequently noted in the opinion, we conclude that a tendered instruction on justifiable homicide was properly refused. Hence, paragraph Fourth was not required.

not prejudicial error because as a matter of law, the evidence did not require the court to give a manslaughter instruction. This is true, says the State, because if there was no evidence adduced at trial to show the mitigating elements of manslaughter (anger, fear or agitation produced by unexpected acts or conduct of the victim), there was no need to include those factors in the form of paragraph Third in the murder, second degree, instruction and their omission could not be prejudicial. We cannot accept this argument. Even if under the evidence the court would not have been obligated to instruct on manslaughter, a premise we do not necessarily accept, the fact is that the court decided to and did instruct on manslaughter. It had the right to do that and the giving of such instruction was not error. Having so elected, the court was obligated to give the instruction on murder, second degree, which included paragraph Third. MAI–CR 6.06 is drafted on the theory that when the jury is instructed on manslaughter, it is necessary to include paragraph Third so that the jury understands the difference between murder, second degree, and manslaughter. If that premise is valid, it follows that it was prejudicial to omit paragraph Third when instructions on both murder, second degree, and manslaughter were given. We find nothing in the record to suggest any reason for a contrary conclusion.

Having concluded to reverse and remand for error in Instruction No. 6, we consider other asserted errors only where it appears reasonably certain that they will recur on retrial and should be resolved for that reason.

■ Appellant asserts that by permitting the State to introduce evidence of his purported participation in the theft of brass fittings from the railroad yard, the court violated the general rule that proof of the commission of crimes other than the one charged is not admissible unless such proof tends to establish the charge for which defendant is on trial. He cites several cases, of which *State v. Griffin*, 336 S.W.2d 364 (Mo.1960) is representative, which announce

such a rule. However, as that case recognizes, the rule is subject to various exceptions. One such exception, recognized in several Missouri cases, was discussed at some length in *State v. Sarkis*, 313 S.W.2d 723, at p. 726 (Mo.1958):

"Mr. De Francesco testified that the gun he took from defendant in the tavern and handed to Mrs. De Francesco was loaded. She testified she gave the gun to an officer when the police arrived. Officer Murray Beech testified that the gun Mrs. De Francesco handed him was loaded. Defendant complains of the admission of this gun in evidence and Officer Beech's testimony that it was loaded when handed to him because the evidence amounted to proof of another crime. Defendant's unjustified accusations against Schulte; Folkerts' intervening on behalf of Schulte and stating to defendant that defendant was trying to start trouble; Folkerts' knocking defendant to the floor when defendant made a fast move toward his rear pocket; Mr. De Francesco's taking the gun from defendant's pocket, ascertaining that it was loaded and handing it to his wife, and defendant's leaving the tavern upon getting to his feet are so interwoven with defendant's stopping an automobile in front of and shooting with a different gun into the tavern, five minutes later, as to constitute a part of the history of the offense charged. This testimony showed defendant's actions and behavior immediately before the shooting; that defendant was then armed, and that he was in a hostile mood. The occurrences in the tavern were closely related to the shooting in time and logical sequence, led up to the shooting, were explanatory of it, tended to show defendant's mental attitude, intent and motive for the offense on trial, and gave character to the whole transaction. The difficulty had its origin in the tavern and its sequel five minutes later in defendant's shooting into the tavern. The contention that the evidence was inadmissible on the ground it tended to show the commission of another crime by defendant is overruled. *State v. Lewis*, 181 Mo. 235, 259,

79 S.W. 671, 677, approved in *State v. Rudolph,* 187 Mo. 67, 84 et seq., 85 S.W. 584, 588; *State v. Fisher,* Mo., 302 S.W.2d 902, 905[2, 3]; *State v. Saale,* 308 Mo. 573, 274 S.W. 393, 396[3, 4]; *State v. Spaugh,* 199 Mo. 147, 97 S.W. 901[3]; *State v. Shilkett,* 356 Mo. 1081, 204 S.W.2d 920, 922[1–4]."

Likewise, in *State v. Garrison,* 342 Mo. 453, 116 S.W.2d 23 (1938), the court, after discussing the general rule and the fact that there are exceptions thereto, stated at p. 25:

"But the fourth exception to the general rule, enumerated in the Buxton Case, is as well settled as the rule itself. It permits proof of another crime where two distinct offenses are so inseparably connected that proof of one necessarily involves proving the other, 16 C.J. § 1134, p. 588; *State v. Smith,* supra, 250 Mo. 350, loc. cit. 368, 157 S.W. 319, loc. cit. 324. * * *"

■ What the court said in the foregoing quotations with reference to the evidence showing commission of another offense being intertwined with and inseparable from evidence relating to the offense charged is pertinent here. The evidence that appellant and Lewis brought brass fittings from the railroad yard which they wanted to load into the Basemore car, that Basemore at first would not permit such loading until appellant persuaded him otherwise by agreeing to share the proceeds with him, that said brass was then hauled to the Doeller residence where efforts were made to locate a sale thereof, that arguments arose between appellant and Basemore, that Basemore demanded $50 as his share, that appellant replied that he would not get that amount, that the men then went outside the Doeller house where their argument continued and that Basemore threatened that if he did not get the $50, he would take it out of appellant's hide, were all so intertwined with the evidence of other events preceding and leading up to the shooting of Basemore that it would have been difficult, if not impossible, for the State to convey to the jury a coherent and meaningful account of the shooting if all evidence which might have shown a theft by appellant of brass fittings and an attempt on his part to sell the same was excluded. Under such special circumstances, the evidence was admissible under the rule stated in *Sarkis* and *Garrison.* See also *State v. Cooksey,* 499 S.W.2d 485, 488 (Mo. 1973); *State v. Aubuchon,* 394 S.W.2d 327, 331 (Mo.1965); *State v. Fuller,* 302 S.W.2d 906, 910 (Mo.1957). Accordingly, we hold that the court did not err in admitting evidence of defendant's purported participation in the theft of the brass fittings.

■ Appellant next asserts that the trial court erred in refusing Instruction 1A, a circumstantial evidence instruction which conformed to MAI–CR 3.42. We find no merit in this contention. This was not a case wherein the evidence was wholly circumstantial. There were three eye witnesses. Under such circumstances, the court could have, but was not required to, give MAI–CR 3.42. This is made clear by Note on Use 2 which states:

"This instruction may be given even if there is some direct evidence of guilt, though it need not be given at all unless the evidence is wholly circumstantial."

See also *State v. Lewis,* 482 S.W.2d 432 (Mo.1972); *State v. Stevens,* 467 S.W.2d 10 (Mo.1971).

■ The next point raised by appellant is that the court erred in failing to instruct the jury on justifiable homicide in accordance with MAI–CR 2.40. We find no evidence that appellant shot in self-defense. Appellant points to evidence of arguments which occurred, the threat by Basemore that if he did not receive $50 from the proceeds he would take it out of appellant's hide, and the evidence that Basemore hurriedly left and then returned, still mad and making threats. He argues that it was reasonable for appellant to believe therefrom that Basemore had gone to get a gun. However, the evidence disclosed that after Basemore returned he got into his car and started the engine preparatory to driving away. Then appellant came up and began shooting. There was no evidence that

Basemore at that time made any move to attack appellant or to indicate that he might be armed or that he was likely at that time to attack appellant. Hence, it was not error to fail to instruct on justifiable homicide. Whether such an instruction will be required on retrial is dependent on whether additional evidence calling therefor is introduced when the case is retried.

Finally, appellant claims that Instruction No. 3 (MAI–CR 2.03) was erroneous in that it in effect cancelled out or excluded consideration of Instruction No. 8, an alibi instruction, as well as portions of Instructions 5, 6 and 7 (murder, first degree; murder, second degree; and manslaughter) wherein the instructions stated: "However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the foregoing, you must find the defendant not guilty". Appellant concedes that he has found no cases to support this proposition but argues that the language in Instruction No. 3 creates a danger that based thereon the jury will disregard some of the instructions given by the court.

We find no merit in this contention. The language objected to has the effect of telling the jury to consider all the instructions, not just part of them. That is in accordance with the rule that all instructions must be read together and constitute a single charge. *State v. Crow,* 486 S.W.2d 248 (Mo.1972); *State v. Prigett,* 470 S.W.2d 459 (Mo.1971).

Reversed and remanded.

All concur.