STATE of Missouri, Respondent,

v.

Clifford GANNAWAY, Jr., Appellant.

No. 46574.

Supreme Court of Missouri,

Division No. 2.

June 9, 1958.

No appearance for appellant.

John M. Dalton, Atty. Gen., Hugh P. Williamson, Asst. Atty. Gen., for respondent.

EAGER, Judge.

■ The defendant was convicted of assault with intent to kill or do great bodily harm and sentenced to two years in the penitentiary. After unsuccessfully moving for a new trial he has appealed. There being no brief for appellant, whom we shall designate as the defendant, we consider such points of the motion for new trial as are sufficiently raised under 42 V.A.M.S. Rule 27.20 Supreme Court Rules. State v. Thomas, Mo., 309 S.W.2d 607.

The state adduced testimony from which the jury might fairly have found to be true the facts which we now set out. One Richard Morton (described in the information as "Motens," but no point being made thereon) and the defendant bought a fifth of wine in Montgomery City on the evening of May 29, 1957, and drank part or all of it; they then proceeded to the home of one Warren Harris to "look at TV" and have some more wine. They were both in the habit of visiting at Harris'; when they arrived Harris was asleep but this was apparently no impediment to the progress of the proceedings. Defendant and Morton there got into an argument about the wine and defendant struck Morton who struck him back; Harris succeeded in getting between the combatants, but defendant picked up a double-barrelled shotgun which was standing "behind the door" near him and raised it, wholly or partially; Harris "knocked the gun down" just as it was fired. The net result was that the charge shot the leg off of a piano stool nearby. Morton testified, referring to defendant and the gun,—"He fired it." Morton also stated that he got a powder burn on his pants; he denied drawing a knife at any time during the controversy. Harris then put each of the combatants out of his house, and by separate doors. He also testified that he saw nothing in Morton's hand, and that the shotgun was loaded but not cocked as it stood in the room prior to the controversy.

The defendant's version of the affair was that he went to Harris' alone, that Morton came in later, and that Morton and Harris drank wine, but he did not. Further, that Morton left, he and Harris turned off the TV, and both laid down to rest or sleep; that Morton returned, in perhaps 15 minutes, somewhat intoxicated, said "he didn't like my looks," and proceeded to slap him; that as defendant was still trying to rise, Morton hit him under the chin and he struck Morton back a couple of times but was driven into a corner; at that time Morton had a knife in his hand and he, defendant, grabbed an old gun standing there and raised it, intending to fend Morton off with it, but not intending to shoot him; that as he brought the gun up it discharged; that at the time Harris was still lying on the bed, and the shot missed Morton by 3 or 4 feet; also, that he did not cock the gun. The jury very clearly found against the defendant's version of the affair. He admitted two previous convictions for felonious assault, and one for second degree forgery; he did not "remember" concerning a conviction for common assault or one for disturbing the peace, both of which were otherwise proven.

■ In the motion for new trial there are assignments of alleged error "in giving State's Instruction No. 2," and in refusing "Defendant's Instruction No. 7, 8, 9 and 10." These assignments, stating no reasons or grounds, are wholly insufficient.

State v. Mayberry, Mo., 272 S.W.2d 236; State v. McLachlan, Mo., 283 S.W.2d 487; State v. Murray, Mo., 280 S.W.2d 809; State v. Stehlin, Mo., 312 S.W.2d 838.

We shall consider the assignment that the court erred in refusing to direct a verdict of acquittal at the close of all the evidence. Counsel presented a motion asserting, in substance, that no crime had been proven, and that no intent to commit an assault had been shown. The circumstances of this case were not conducive to a highly enlightening brand of testimony. However, there was evidence, which the jury was entitled to believe, that defendant struck Morton, thus bringing on a fist-fight, and that in the course of the fight, he picked up the shotgun and fired it in Morton's direction, the charge being diverted by Harris' action in pushing the gun away. There can be no doubt that this constituted submissible evidence of an assault. Upon such an assignment we consider as true the evidence favorable to the state and the favorable inferences reasonably to be drawn therefrom. State v. Whitaker, Mo., 275 S.W.2d 316. From this evidence the jury might reasonably infer an intent to discharge the gun, and an intentional firing of it at Morton, notwithstanding defendant's denial. Intent is, of course, an element of the offense, but as this court said in State v. Chevlin, Mo., 284 S.W.2d 563, loc. cit. 566: " * * * It is the unusual situation when there is direct evidence of the intent of a person charged with a crime such as here. Intent may and generally must be established by circumstantial evidence, for as a rule it is not susceptible of direct proof. State v. Whitaker, supra [7]; 23 C.J.S. Criminal Law § 919. In determining whether or not the assault was committed with the intent charged it is clearly within the province of the jury to consider the statements of the appellant, the nature of the weapon used, the manner of using it, and all of the related circumstances giving rise to the in-cident out of which the charge arose State v. Hoffman, 78 Mo. 256 [2]; State v. Musick, 101 Mo. 260 [6], 14 S.W. 212; 40 C.J.S. Homicide § 79b(1); 6 C.J.S. Assault and Battery § 79b(2); 4 Am.Jur. Assault and Battery § 102." We hold that there was substantial evidence of a felonious assault and of the necessary intent, and that the trial court properly declined to direct a verdict of acquittal.

Three assignments in the motion concern the witness Warren Harris. They may be considered together. Essentially these are: that the court erroneously permitted Harris to testify when he was obviously under the influence of liquor; that it erred in allowing him to be taken out of the presence of the court in the custody of the Prosecuting Attorney and the Sheriff; and that it erred in overruling "Defendant's objection" to all of Harris' testimony. Harris had been subpoenaed by the state, and at the beginning of the trial the state orally requested a "continuance" on account of his absence; it seems probable that only a temporary delay was thus sought. Defendant's counsel objected to "any continuance for any grounds whatsoever," and they also refused to agree that Harris was "not available." Eventually Harris was brought in from his home and he made some excuse for his late appearance by reason of a possible confusion in dates. At that time the court stated that he would "dispose of his matter" after the trial, and that he did not want Harris out of the sheriff's custody. This witness later testified, rather fully, albeit somewhat reluctantly. The record contains no sufficient showing that he was intoxicated; in the colloquy at the start of the trial, and after Harris had been questioned out of the jury's presence, the Prosecuting Attorney stated that Harris was obviously intoxicated; that statement was not made or received as evidence. Counsel for defendant immediately opposed a continuance on that ground say-

ing " * * * there is no testimony whatsoever that he is so under the influence * * * his demeanor on the stand * * * may be his normal demeanor." Harris did not testify in the case until after the noon recess; the City Marshal said, in surrebuttal, that he did not know whether Harris was "under the influence this morning or whether he was getting over a hangover." At no point did counsel for defendant object to Harris' testifying on account of his condition nor do we find that they moved, at any time, to strike his testimony on that account or otherwise. In fact, the present assignments are diametrically opposed to the position which counsel took when the prosecutor asked a continuance, which motion was denied. The whole matter was one resting largely in the discretion of the trial court, and this record does not support or preserve any attack as assigned in the motion. The only objection or protest made about Harris being in "custody," was that counsel voiced an objection, just before the lunch hour, to "any sobering up process" for Harris, and to removing him "with instructions by the Prosecuting Attorney * * * not made available to the defendant." We are not certain that we understand just what is meant by the assignment that the court erred in allowing Harris "to be taken in the custody of the Prosecuting Attorney and the Sheriff out of the presence of the Court"; if counsel were referring to proposed consultations of the Prosecuting Attorney and the witness whom he had subpoenaed, such were, of course, permissible. If anything else was intended it is not properly assigned in the motion. The whole matter was inherently within the trial court's discretion.

■■■■ The remaining assignment is of alleged error in "refusing to allow de-

fendant to question Richard Motens (or Morton) in regard to his mental capacity and as to his sobriety when alleged assault took place." The court sustained objections to questions concerning Morton's military service records and the reason for his discharge from the Navy. The motion for new trial does not properly assign error in these rulings. Counsel asked Morton if he was "suffering from any mental disability"; an objection thereto was overruled, and the witness answered that he was not. The record does not support that part of the assignment. Counsel was also permitted to cross-examine the witness fully about his drinking on the evening in question, and to ask him if he was not drunk. There is no merit in the assignment.

■■■■ The informaton here would be defective under Section 559.180 RSMo 1949, V.A.M.S., as it does not allege "malice aforethought"; the record indicates that the trial court considered it as a charge under § 559.190, of assault with intent to kill or do great bodily harm, and so instructed the jury. The information contains all the essential elements of a crime under that section. The reference in the information to the use of a deadly weapon may be considered as surplusage, if that be necessary (State v. Hacker, Mo., 214 S.W.2d 413, 415), although we see no reason why the assault described in § 559.190 may not likewise be committed with a deadly weapon, and there was evidence to sustain the allegation. The information was sufficient under § 559.190. The formal parts of the record, including the verdict, the granting of allocution, and the judgment and sentence, are sufficient. The judgment and sentence are therefore affirmed.

All concur.