**STATE of Missouri, Respondent,**

v.

**Ernest Paul SARKIS, Appellant.**

No. 46434.

Supreme Court of Missouri,

Division No. 2.

June 9, 1958.

No appearance for appellant.

John M. Dalton, Atty. Gen., Winston Cook, Sp. Asst. Atty. Gen., for respondent.

BOHLING, Commissioner.

Ernest Paul Sarkis was found guilty of an assault with intent to kill Louis Folkerts and his punishment was assessed at three years' imprisonment by the jury. Section 559.190 RSMo 1949, V.A.M.S. Defendant appealed from the judgment entered thereon. He has filed no brief. His motion for new trial questions the submissibility of the State's case, the opening statement of the State's attorney, and the admissibility of certain evidence.

■ Defendant offered no witness. The evidence most favorable to the State and the reasonable inferences to be drawn therefrom are for consideration in determining the sufficiency of the State's evidence. State v. Sheard, Mo., 276 S.W.2d 196, 200; State v. Jones, 363 Mo. 998, 255 S.W.2d 801, 804 [2]. The jury could find the following facts.

Mrs. Nellie De Francesco operated the "Club L" tavern at 2818 Lafayette street, in the City of St. Louis, Missouri. The tavern is located on the south side of the street, with two six-foot-wide windows at the front. The bar extends east and west, with a short L at the east end, and accommodates fifteen or more bar stools. Customers on the stools at the long part of the bar face south and those on the L face west. A number of booths are in the tavern. A large "Club L" neon sign and over one hundred regular light bulbs are on the front of the building. These and the street lights light up the street in front of the tavern. One can see through the windows out into Lafayette street from the bar.

Defendant entered the tavern about 12:45 a. m. November 9, 1955. Mr. and Mrs. De Francesco knew defendant. About twenty patrons were in the tavern. All seats at the bar were occupied. Mr. De Francesco gave defendant his seat at the bar and started talking to Anthony Schulte, who had entered the tavern a short time before with John Trower, Louis Folkerts

and Gene Jones. They were seated on bar stools, Folkerts at the curve on the L of the bar.

Defendant ordered a drink and was served by Mrs. De Francesco. She took the money for defendant's drink from the bar and put it in the cash register. When she turned around defendant was in an argument with Schulte. Schulte stated defendant accused them of talking and joking about him, but Schulte denied doing this. Mr. De Francesco told defendant "Ernie, that man don't say nothing about you. You get your drink and finish up your drink and don't have no trouble." Defendant started back to his seat at the bar, but came back and commenced giving Schulte "a cussing out." Louis Folkerts noticed the argument, stepped over and told defendant that Schulte was a "buddy of mine"; that defendant had come there for trouble, and that he didn't want Schulte to get into trouble. Defendant then made a fast move with his hand toward his right rear pocket, and Folkerts stated he didn't wait but hit defendant twice, knocking him some distance and to the floor near the door.

When Folkerts knocked defendant down, Mr. De Francesco went to defendant, took a gun out of defendant's coat, saw that it was loaded, and handed it to Mrs. De Francesco, who was behind the bar. Mrs. De Francesco called the police.

Defendant got up, stated he was leaving, and left. Folkerts resumed his seat at the bar. In about five minutes defendant drove west in an automobile on Lafayette street and stopped in the street in front of the tavern. There were no cars parked in front of the tavern. A shot came through the east window of the tavern, a little high, followed by two shots through the window a little lower. By that time many customers in the tavern had dropped to the floor. Mrs. De Francesco, back of the bar, said she did not have sense enough to move. Witness Folkerts testified that he was then at the bar in a half-sitting and half-stand-

ing position, and that he was six feet one inch tall. Mrs. De Francesco testified she recognized defendant on the front seat of the automobile "behind the wheel," "kind of turned around," with his arm out of the window, a pistol in his hand and doing the shooting. She stated defendant also shot through the west window. Mr. De Francesco saw defendant in the car, alone, saw him plainly, saw him shooting, and stated three or four shots came through the windows of the tavern. Five or seven shots were fired. Schulte testified that one of the bullet holes "was almost directly over Lou Folkerts' head." There were no bullet holes in the windows before this shooting.

The police arrived after the shooting. Officer Murray Beech stated he found two spent bullets on the floor in the L towards the back bar and one in the ceiling.

 Defendant contends the court erred in not declaring a mistrial when the State's attorney told the jury in his opening statement the evidence would show that defendant was apprehended November 10, 1955, and "that each of the persons present in the tavern that evening identified this defendant as the one * * *"; and also when witness Folkerts, in answer to whether he had seen defendant after the evening of the shooting, said: "Yes, to identify him." A similar situation developed while Mr. De Francesco was on the stand. The declaration of a mistrial rests largely in the discretion of the trial court. In the above instances the court sustained defendant's objections and instructed the jury to disregard the State's attorney's statement and the answers of witnesses Folkerts and De Francesco but denied defendant's request for a mistrial. Aside from possible other reasons not necessary to develop here, there is no sufficient basis for holding the court abused its discretion in refusing to discharge the jury. State v. Vidauri, Mo., 293 S.W.2d 955, 956 [2, 4]; State v. Sinovich, 329 Mo. 909, 46 S.W.2d 877, 881 [12, 13]; State v. Walker, Mo., 46 S.W.2d 569.

570 [2]. Consult State v. DePoortere, Mo., 303 S.W.2d 920, 924 [3].

■ Officers Murray Beech and Fred Akiki answered the call to Club L that night. Defendant objected to Officer Beech being asked if he received "any information as to how all this had occurred" on the ground the question called for hearsay testimony. The court overruled the objection, stating the question did not call for the information the officer received, but only whether he received any information. The witness answered "Yes, sir." Police officers receive information of occurrences not in their presence that they may discharge their duties and protect the public. The details of the information received may be hearsay but that they were informed is a fact and explanatory of their subsequent action. 22 C.J.S. Criminal Law § 718, p. 1229. Then followed: "Q. Did you later put out an order for the arrest of this defendant? A. Yes." Defendant's objection to the last question and answer was sustained and the jury instructed to "completely eliminate the question and answer from your minds." The foregoing is not the situation disclosed by the record in State v. Chernick, Mo., 278 S.W.2d 741, 747 [4]. We find no abuse of discretion in the trial court's denying defendant's request for a mistrial.

■ Testimony of witnesses that unidentified persons in the tavern "hollered": "Mr. Sarkis"; "There he is back"; "Sarkis out there"; "There he is outside" when the shooting started and the customers commenced to drop to the floor of the tavern were admissible as part of the res gestae. State v. Fletcher, Mo., 190 S.W. 317, 320 [5]; State v. Sexton, 147 Mo. 89, 48 S.W. 452, 456(6); State v. Kaiser, 124 Mo. 651, 28 S.W. 182, 187(3); State v. Lowry, 321 Mo. 870, 12 S.W.2d 469, 473 [6].

■ Mr. De Francesco testified that the gun he took from defendant in the tavern and handed to Mrs. De Francesco was loaded. She testified she gave the gun to an officer when the police arrived. Officer Murray Beech testified that the gun Mrs. De Francesco handed him was loaded. Defendant complains of the admission of this gun in evidence and Officer Beech's testimony that it was loaded when handed to him because the evidence amounted to proof of another crime. Defendant's unjustified accusations against Schulte; Folkerts' intervening on behalf of Schulte and stating to defendant that defendant was trying to start trouble; Folkerts' knocking defendant to the floor when defendant made a fast move toward his rear pocket; Mr. De Francesco's taking the gun from defendant's pocket, ascertaining that it was loaded and handing it to his wife, and defendant's leaving the tavern upon getting to his feet are so interwoven with defendant's stopping an automobile in front of and shooting with a different gun into the tavern, five minutes later, as to constitute a part of the history of the offense charged. This testimony showed defendant's actions and behavior immediately before the shooting; that defendant was then armed, and that he was in a hostile mood. The occurrences in the tavern were closely related to the shooting in time and logical sequence, led up to the shooting, were explanatory of it, tended to show defendant's mental attitude, intent and motive for the offense on trial, and gave character to the whole transaction. The difficulty had its origin in the tavern and its sequel five minutes later in defendant's shooting into the tavern. The contention that the evidence was inadmissible on the ground it tended to show the commission of another crime by defendant is overruled. State v. Lewis, 181 Mo. 235, 259, 79 S.W. 671, 677, approved in State v. Rudolph, 187 Mo. 67, 84 et seq., 85 S.W. 584, 588; State v. Fisher, Mo., 302 S.W.2d 902, 905 [2, 3]; State v. Saale, 308 Mo. 573, 274 S.W. 393, 396 [3, 4]; State v. Spaugh, 199 Mo. 147, 97 S.W. 901 [3]; State v. Shilkett, 356 Mo. 1081, 204 S.W.2d 920, 922 [1–4].

■ Defendant's assertion of error that three "spent bullets" were improperly re-

ceived in evidence because not identified or connected with the shooting is refuted by the record. Officer Beech, in his investigation upon arrival, found two of the bullets on the floor near the L in the bar and took the other from the ceiling. A bullet hole was in the back bar but the bullet was not removed on account of the damage that would result. State v. Burney, 346 Mo. 859, 143 S.W.2d 273 [4]; State v. Richetti, 342 Mo. 1015, 119 S.W.2d 330, 339.

Customers inside the tavern saw and recognized defendant as the one shooting into the tavern. Mirrors were back of the bar with four neon lights. There was also a center ceiling light in the tavern. The testimony was that the neon lights gave "a very bright light." Folkerts, a large man, six feet one inch tall, was half-sitting and half-standing at the L of the bar. Two of the bullets were found on the floor near this L and one of the bullet holes was almost directly over Folkerts' head. This was sufficient for a finding by the jury that shots were fired at Folkerts, the person who had knocked defendant to the floor of the tavern while near the L of the bar only a few minutes before. See State v. Tunnell, Mo., 296 S.W. 423 [7]. In State v. Layton, 332 Mo. 216, 58 S.W.2d 454, 457 [6], a conviction was upheld where defendant shot at a person behind a door intending to kill that person, although not knowing who was there. In State v. Martin, 342 Mo. 1089, 119 S.W. 2d 298, 301 [5], the court remanded a conviction for new trial where defendant's act caused no injury to any person and defendant was charged with a felonious assault upon one whose presence was not shown to be known to defendant. The court remarked: "If he [accused] knows the probable consequence of the assault will be to injure any one or all of the persons he sees or otherwise is bound to believe are before him, he will be liable as to any one of them. But if, without his knowledge there be still another person present concealed, as behind a bush or wall for illustration, he would

not be liable as to that person for he could have no specific intent as to him."

■■■■ The charge against defendant was laid under the habitual criminal act. Sections 556.280, 556.290 RSMo 1949, V.A. M.S. Four assignments in defendant's motion for new trial assert error in admitting State's exhibits 8 and 9 in evidence. The assignments, objections and rulings disclose these exhibits tended to establish the habitual criminal charge. The verdict of the jury did not find any prior conviction of defendant and the punishment assessed was not the maximum required under the habitual criminal act. Any issue involving prejudicial error in receiving the exhibits in evidence passed out of the case. State v. Lord, Mo., 286 S.W.2d 737, 741 [12]; State v. Nolan, Mo., 171 S.W.2d 653, 654 [4]. While the record before us indicates error was not committed in ruling defendant's objections, some of which were sustained, defendant thought the assignments so unimportant that he did not produce the questioned exhibits upon his appeal. It was this defendant's duty to prepare and file here a proper transcript on his appeal. 42 V.A.M. S. Sup.Ct.R. 28.08; State v. Dowling, 348 Mo. 589, 154 S.W.2d 749, 753 [1]; State v. Crader, Mo., 225 S.W.2d 353 [1]. There is no presumption that a trial court commits error when an exhibit is admitted in evidence (State v. Hathaway, 115 Mo. 36, 21 S.W. 1081, 1083(2)), and there is nothing before us to sustain this charge of error against the trial court. State v. Lindner, Mo., 282 S.W.2d 547, 553 [13]; State v. Farrar, Mo., 285 S.W. 1000, 1003 [6].

What we have said disposes of all assignments of error in defendant's motion for new trial.

We have examined the record and find no prejudicial error in regard to matters not required to be preserved in a motion for new trial.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.