STATE of Missouri, Respondent,

v.

Norman Eugene LUNSFORD, Appellant.

No. 47909.

Supreme Court of Missouri,

Division No. 1.

Oct. 10, 1960.

James J. Rankin, St. Louis, for appellant.

John M. Dalton, Atty. Gen., Robert E. Hogan, Sp. Asst. Atty. Gen., for respondent.

HYDE, Judge.

Defendant was convicted of assault with intent to kill with malice aforethought by shooting John Bradley and sentenced to 35 years' imprisonment in accordance with the verdict of the jury. He has appealed from this judgment and sentence.

Defendant was previously convicted of murder in the second degree for shooting and killing Wesley Huson on the same occasion; after which he shot and wounded John Bradley, the owner of a tavern in which the shooting occurred. The murder conviction was affirmed in State v. Lunsford, Mo.Sup., 331 S.W.2d 538, to which reference is made for a statement of the facts since defendant makes no assignment that the evidence herein was insufficient to sustain his conviction. As in that case, defendant has filed no brief herein and we therefore review the assignments of error properly preserved in his motion for new trial.

Defendant's defense herein was alibi but he was positively identified as having done the shooting by the same witnesses who so testified in the murder case and was further identified by other circumstances as hereinafter shown. Defendant's assignments all go to alleged trial errors. Defendant's companion Bobby Lee Griffin was tried separately for the murder of Huson, convicted and sentenced to 25 years' imprisonment. However, on appeal this judgment and sentence was reversed and remanded for improper admission of evidence, State v. Griffin, Mo.Sup., 336 S.W.2d 364. Defendant by assignments 2, 3, 4, 6, 7 and 10 of his motion raises similar questions concerning admission of evidence herein. Reference is made to the statement of the testimony in that case which it was held (336 S.W.2d loc. cit. 367) "established the details of the prior offenses mentioned by the witnesses as though defendant had been upon trial for their commission."

As stated, defendant's defense, as in the murder case, was alibi. One of the most important fact issues in this case was the identification of the man who fired the shots in the Bradley Tavern, which killed Huson and wounded Bradley. The State's evidence (in addition to the identification by eyewitnesses to the shooting) which tended to identify defendant as the man who did the shooting was testimony of witnesses tracing his movements from another tavern (called Pat and Rose's Tavern) to the Bradley Tavern. The revolver used in the shooting at Bradley's was not found but the State had evidence to show that a bullet fired by defendant into the wall at Pat and Rose's Tavern (according to the testimony of witnesses who said they saw him there) and the bullets which struck Huson and Bradley had been fired from the same weapon. Defendant denied being in either tavern but said he had arrived near Bradley's on a bus a minute or two before officers carried Huson from the tavern; and that he was then arrested while standing there watching.

According to the State's evidence, defendant's alleged accomplice, Griffin, was with him at both taverns and was with him in the taxi in which they went from one to the other. Thus, as held in the Griffin case (336 S.W.2d loc. cit. 367), "the testimony of their presence at Pat and Rose's Tavern and in Patch's taxicab and so much of their actions as was relevant and necessary to refute defendant's alibi and establish his presence at the murder of Huson was competent." However, we held the evidence of the activities of defendant and Griffin (see statement of this evidence, 336 S.W.2d loc. cit. 365–366) was improperly admitted because "proof of the presence of Lunsford and defendant (Griffin) at Pat and Rose's Tavern and in Patch's taxi did not necessitate a showing of all the details of their disturbances of the peace, assaults, batteries, robbery by means of a dangerous and deadly weapon and other offenses prior to the homicide for which defendant was on trial; and the admission in evidence of the details of such offenses which had no tendency to identify defendant as a participant in the homicide or to refute his alibi constituted reversible error." As hereinafter shown, such details were not put in evidence in this case and our conclusion is that there was no reversible error in the admission of evidence in this case.

Defendant's motion for new trial assigns as error the admission of the testimony of the witnesses James Henderson and his wife Opal Henderson and William Patch. The Hendersons identified defendant as having come into Pat and Rose's with Griffin shortly before 8:30 P.M. (November 24, 1958), described his appearance and how he was dressed (they had seen him there the previous Sunday) and said that defendant had a pistol which he fired into the north side of the wall over the door. Mrs. Henderson called the police from a phone booth and went across the street to another tavern to make another call. As she came back, she saw defendant and his companion come out and get in a Black and White taxi,

which had just come up, and then saw the cab leave. Defendant got in the front seat and the other man in the back seat. She said it was then about "twenty till nine." She saw defendant again at a police station about midnight. Mr. Henderson did not see the pistol fired but heard it and said defendant then ordered him, and two men sitting with him, out the door. While he was outside, defendant and his companion got into a Black and White taxi. He also saw defendant again at the police station about midnight.

Patch, a cabdriver for Black and White, said he went to Pat and Rose's in response to a call. He started to drive away after Mrs. Henderson said something to him but defendant and his companion ran out and got in his cab. Defendant got in the front seat and held a revolver to the side of Patch's head and told him to drive to East St. Louis. They stopped there, told Patch to get out, and the other man took his cap and drove the car with Patch on the floor of the back seat. Defendant sat over him and held the pistol in his back. They drove back to St. Louis, stopped the cab at Menard and Julia Streets, and both men left, defendant having the pistol with him. (Bradley's Tavern was at the next intersection, Menard and Lafayette, a short block away.) Ten or fifteen minutes later, he saw defendant in the custody of two police officers at Menard and Lafayette. It was shown that defendant and his companion went into the Bradley Tavern about 9:00 P.M.

█ Comparing this testimony with the statement of facts in the Griffin case (336 S.W.2d loc. cit. 364) it is apparent that the Hendersons were not asked about the details of defendant's activities at Pat and Rose's, such as pointing the pistol at persons there and threatening to shoot them if his orders were not obeyed. Likewise Patch did not testify as he did in the Griffin case about defendant striking him with the pistol or robbing him of his money. It was relevant and necessary to refute defendant's alibi to show that he had a pistol at Pat

and Rose's from which he fired a bullet there, which came from the same gun he fired at Bradley's to commit the crime with which he is here charged. It was also relevant and necessary for the same purpose to trace defendant from Pat and Rose's to Bradley's and to show that he had possession of the pistol during that trip, as Patch's testimony did; and the fact that this testimony tended to show commission of other crimes (not gone into in detail) did not make it inadmissible. We have thus stated this rule: "Where the proof of other offenses may tend to establish motive, or intent, or absence of accident or mistake, or identity of the defendant, or a common scheme or plan embracing the commission of separate similar offenses so interrelated to each other that proof of one tends to establish the other, such other offenses are widely held under these circumstances to be admissible in proof." State v. Saussele, Mo. Sup., 265 S.W.2d 290, 296, and cases cited; see also State v. Thompson, Mo.Sup., 299 S.W.2d 468; State v. Scown, Mo.Sup., 312 S.W.2d 782; State v. Sarkis, Mo.Sup., 313 S.W.2d 723; State v. Wilson, Mo.Sup., 320 S.W.2d 525; State v. Taylor, Mo.Sup., 324 S.W.2d 643. Our ruling as to the admission of this evidence also disposes of assignments 6 and 7 of defendant's motion alleging error in showing that Huson's body was on the floor of the Bradley Tavern and that Huson was dead as the result of being shot in the tavern. This is true because the circumstances of the shooting of Huson not only was relevant on the issue of intent but also were so interrelated with the shooting of Bradley as to show a continuing and inseparable factual background definitely relevant to the determination of the essential issue in this case, to-wit: whether defendant's assault on Bradley was felonious with intent to kill with malice aforethought. State v. Fisher, Mo.Sup., 302 S.W.2d 902, 905; State v. Varner, Mo.Sup., 329 S.W.2d 623, 628, and cases cited. Assignment 10 that "the verdict was the result of passion and prejudice by the jury against the defendant and resulted from the admission in evidence of a large number of separate crimes allegedly committed by the defendant," if definite enough to preserve anything for review, is likewise ruled by what we have said. Assignments 2, 3, 4, 6, 7 and 10 are overruled.

Assignment 9 alleges error in admitting in evidence the three bullets shown to have been fired from the same weapon (one from the wall of Pat and Rose's Tavern, one from the body of Huson, and one that struck Bradley). Defendant's contention that these constituted evidence of separate crimes has been ruled by our previous ruling because they were part of the evidence refuting his alibi. Defendant's claim that these bullets were not properly identified and established as authentic in the chain of custody is without merit. The bullet taken from the wall at Pat and Rose's was marked by Corporal Mullarky at the time by scratching a "6" on it. He identified this mark at the trial and said he had not put that mark on any other bullet. Although there was testimony that the "6" was put on in the laboratory and Mullarky on cross-examination admitted that a similar figure could have been placed on some other bullet by someone else, which could look the same, he said "that is my figure" and "that is the '6' that I scratched on there." Mullarky also identified the envelope marked in his presence, in which the bullet was placed that night to be sent to the laboratory. Officer Miles (the first policeman at Bradley's after the shooting) recovered a spent bullet underneath the body of Huson and a spent bullet from Bradley's sleeve, which he sent to the police laboratory in marked envelopes. Miles identified the bullets offered in evidence as being of the same size, shape and condition. Officer Brocksmith, of the police laboratory, said he marked all three bullets and the envelopes when he got them. He said all three bullets had been tested and kept by him and all were fired from the same weapon. In State v. Burney, 346 Mo. 859, 143 S.W.2d 273, 277, we said testimony, less definite as to markings, "was sufficient to make the bullet competent evidence, not-

withstanding the testimony did not directly trace it from hand to hand during the intervening months." See also State v. Richetti, 342 Mo. 1015, 119 S.W.2d 330, 338; State v. Shawley, 334 Mo. 352, 67 S.W.2d 74, 84; State v. Parr, 296 Mo. 406, 246 S.W. 903, 905. We so hold here and overrule assignment 9.

 Assignments 5 and 8 concern the testimony of witness Quinn, an employee of the coroner, as to Huson's autopsy, showing his death and cause of death. The claim of error in so showing is ruled by what we have said in ruling assignments 6 and 7. See also State v. Rasco, 239 Mo. 535, 144 S.W. 449, 460; State v. Mosley, Mo.Sup., 22 S.W.2d 784, 786; State v. Varner, supra, 329 S.W.2d loc. cit. 628. As to the contention that this record was hearsay, depriving defendant of his right of confrontation of witnesses and right of cross-examination, it is sufficient to say this was admissible under the Business Records as Evidence Law. Secs. 490.660–490.690; see also Rossomanno v. Laclede Cab Co., Mo.Sup., 328 S.W.2d 677, 681; York v. Daniels, 241 Mo.App. 809, 259 S.W.2d 109, 123. Assignments 5 and 8 are overruled.

The remaining assignment 1 claims error in failing to instruct the jury that defendant's former convictions should be considered only in determining his punishment if found guilty and should not be considered in determining guilt. The jury was instructed that if they found prior convictions and discharge thereafter, they should assess defendant's punishment at life imprisonment. However, they made no such finding and assessed his punishment at 35 years. In State v. Sarkis, Mo.Sup., 313 S.W.2d 723, 727, we said: "The verdict of the jury did not find any prior conviction of defendant and the punishment assessed was not the maximum required under the habitual criminal act. Any issue involving prejudicial error in receiving the exhibits in evidence passed out of the case." See also State v. Preston, Mo.Sup., 184 S.W.2d 1015, 1017. Furthermore, since defendant

testified in his own behalf his prior convictions were admissible to impeach his credibility and could have been considered for that purpose. Sec. 491.050 RSMo, V. A.M.S.; State v. Swisher, 364 Mo. 157, 260 S.W.2d 6, 11, and cases cited. Assignment 1 is overruled. We have examined the record as required by Rule 28.02, V.A. M.R., and find no error respecting the sufficiency of the information, verdict, judgment and sentence.

The judgment is affirmed.

All concur.