STATE of Missouri, Respondent,

v.

Eugene Joseph BARNES, Appellant.

No. 48277.

Supreme Court of Missouri,

Division No. 1.

April 10, 1961.

Richard L. Daly, St. Louis, for appellant.

John M. Dalton, Atty.Gen., W. H. Bates, Special Asst. Atty. Gen., for respondent.

DALTON, Judge.

Defendant was charged with robbery in the first degree with a dangerous and deadly weapon under the Habitual Criminal Act, seven prior felony convictions were alleged. See Secs. 556.280, 560.120 and 560.-135 RSMo 1959, V.A.M.S. On trial, a jury returned a verdict of guilty and the court assessed the punishment at 17 years' imprisonment in the State Penitentiary. Defendant was represented by court appointed counsel and he was permitted to appeal as a poor person and a free transcript was provided. No brief has been filed in this Court on his behalf and we shall review the assignments of error set forth in his motion for a new trial.

On February 23, 1960, at about 12:15 a. m., William Slay was in a package liquor store, which he owned and operated at 4217 West Easton Avenue in the City of St. Louis. He was in the store alone when a person, later identified as defendant and hereinafter so referred to, entered and ordered a fifth of wine. When it was set out and the price stated, the defendant presented a gun and said, "This is it man, hand it over." When Slay saw the gun, he was frightened and handed over his money, $35 from the cash register. It was in bills and change. When defendant held out his left hand to take the money, Slay observed that it was bleeding. Slay only saw the barrel of the nickel-plated gun and observed

that defendant was about five feet eleven inches in height, weighed about 180 pounds, had a scar on the left side of his face and wore a grey overcoat and a dark cap. Before leaving, defendant required Slay to lie down on the floor, but as soon as defendant left the store, Slay got up and looked out in time to see defendant cross Easton Avenue and go through a gangway, going south.

Slay immediately called the police and gave a description of the robber. Within twenty minutes after the robbery, the police brought a man to Slay's Liquor Store. Slay testified at the trial that the man brought in was the man who held the pistol on him and took his money. He identified the defendant on trial as that man. Slay also identified the gun, the cap and the overcoat. "Looks like the gun he had in his hand" and like the coat and cap the man was wearing.

Two police officers of the City of St. Louis, members of the mobile reserve unit, testified that about 12:15 a. m., February 23, 1960, they were in a police car near St. Ferdinand and Newstead and received a "radio call describing a man wanted for holdup." They immediately began a search of the area around Finney and Pendleton, where they observed a man in a liquor store at 4269 West Finney. They went into the store and observed that the man "was a colored male about thirty years old and he was wearing a grey overcoat, a brown cap and both hands were bleeding." They also observed an ivory-handled revolver sticking from his right coat pocket. They arrested and disarmed him. The arrest was made about four blocks south of Slay's Liquor Store. The gun, a .38 caliber chrome-plated, five-shot revolver, contained four cartridges. They felt money in the man's coat pockets, but did not remove it at that time. The man was immediately taken to Slay's Liquor Store and into Slay's presence and some of the money was taken out of the man's pockets and put in a bag, but all the money was not removed at that time. From Slay's store the man was taken immediately to police headquarters where he was searched. The police officers found a total of $51 in currency and change in the man's right overcoat pocket and $17 in currency and change in his left overcoat pocket. The change was in halves, quarters, nickels and dimes. The man arrested was the defendant on trial. Defendant offered no evidence.

■ In his motion for a new trial defendant assigned error on the court's action in overruling his objections and allowing each of the police officers, Brown and Carraway, "to testify that he received a radio communication in which he received a description of a man wanted for a robbery and that shortly afterwards he saw the defendant and that the defendant fit the description of the man wanted, as broadcast in the radio communication, and that he then arrested the defendant."

There is no testimony in the record to support the statement that either witness was permitted to testify "that the defendant fit the description of the man wanted, as broadcast in the radio communication", or as to what description was broadcast over the radio.

As to witness Brown, the record shows:

"Q. Will you tell me what happened at that time? A. We received a radio call describing a man wanted for the holdup.

"Mr. Daly: Of course, I object to this as hearsay.

"The Court: He can tell us whether or not he received a radio call; don't go into any description.

"Mr. Koster: Did you receive a radio call? A. Yes, we did."

It will be noted that the question did not call for the answer given and that the objection did not include a motion to strike and so the answer remained in the record. The witness, however, had not given any inadmissible testimony. The fact that the

witness said he had heard a radio broadcast was not hearsay. The testimony as to having heard such a broadcast tended to explain the subsequent conduct of the witnesses and was properly admissible. State v. Sarkis, Mo.Sup., 313 S.W.2d 723, 726(4); State v. Bright, Mo.Sup., 269 S.W.2d 615, 623(11); State v. Golden, 353 Mo. 585, 183 S.W.2d 109, 116(14, 15); Manz v. Commonwealth, Ky., 257 S.W.2d 581, 582(2); Trotter v. State, 215 Ark. 121, 219 S.W.2d 635, 638; 22 C.J.S. Criminal Law § 718, p. 1229. The description given over the radio was excluded by the trial court's order. No error appears from this record.

As to witness Carraway, the record shows:

"Q. And what, if anything, occurred at that time? A. Well, I heard a radio description of a man wanted—

"Mr. Daly: Of course, I object to that and ask it be stricken and the jury instructed to disregard it and a mistrial be declared.

"The Court: Don't go into the description. Did you get a radio report? A. Yes.

"The Court: That is all.

"Mr. Koster: What did you do after you got this radio report? (Thereupon, the following occurred outside the hearing of the jury:)

"Mr. Daly: I object to this question as it is obviously an attempt to do something by indirection he can't do directly, making it obvious it was a radio report—

\*   \*   \*   \*   \*   \*

"The Court: Well, I have ruled on the matter. \* \* \* (Thereupon, the trial was resumed before the jury as follows:)

"The Court: Go ahead.

"Mr. Koster: What did you do then, Officer? A. I drove around the area to Pendleton and Finney, sir.

"Q. All right, what, if anything, occurred at that time? A. Saw a man standing in a liquor store at 4269 Finney."

■ It will be noted that the first question did not call for any improper evidence; and that, after it was answered, no ground for the objection was stated. The specific relief asked was not granted, but no ground was assigned for requesting it. In such a case the applicable rule is well stated in State v. Tipton, 307 Mo. 500, 271 S.W. 55, 58: "Before a trial court can be convicted of error in admitting 'hearsay' testimony, it must appear from the record, that the party complaining made a proper, timely, and specific objection to the testimony when offered; and that he objected to the same when offered, because it was 'hearsay' evidence." However, as we have seen, the evidence admitted was properly admitted. State v. Sarkis, supra; State v. Bright, supra.

■ Error is assigned on the court's action, "in allowing the Assistant Circuit Attorney to argue that after getting the description of the man wanted, the police officers, witnesses Brown and Carraway, arrested the defendant, Eugene Joseph Barnes, who fit the description received by the aforesaid officers in the radio communication."

The record fails to disclose that any such argument was made, or that, if made, it was objected to. Only one objection was made to any part of the argument of counsel for the State and the objection to that argument was fully sustained and no further relief requested. There is no evidence in the record to show what description was broadcast over the radio, or what description had been received by the arresting officers. Nor does the record show what description was given by Slay to the police within five minutes after the occurrence. Further, the charge that an argument was made that defendant "fit the description received by the aforesaid officers in the radio com-

munication" is without support in the record. The assignment is overruled.

■ Error is assigned on the action of the court in applying Sec. 556.280 RSMo 1959, V.A.M.S., and "in receiving in evidence and in making a finding concerning defendant's alleged prior convictions, outside of the hearing of the jury, and in failing to submit the fact question of defendant's alleged conviction, sentencing, and discharge, to the jury for its determination." It is also contended that the application of said Sec. 556.280 was in violation of due process of law (Art. I of Sec. 10 of the Constitution of Missouri, 1945, V.A.M.S.) and in violation of the several provisions of Sec. 1 of the 14th Amendment to the Constitution of the United States. Defendant charges: " * * * that he was denied and deprived of substantial rights which had been accorded to others who had been indicted for crimes in the State of Missouri before the date of his own indictment namely; the right to have the fact question of his prior convictions submitted to a jury; and the right to require that there be a finding of the fact of his discharges, either upon pardon, or upon compliance with the sentence imposed in the alleged prior conviction." Defendant further says that: " * * * the Court deprived the defendant of his constitutional right to a trial by jury, in violation of Article I, Section 22(a) of the Constitution of the State of Missouri, 1945."

The procedure followed by the court was not objected to at the time of the trial and an objection first appears in defendant's motion for a new trial. The only objection made at the time the original court records concerning prior convictions were brought into court, and identified in a hearing held outside of the hearing of the jury, was to the action of the court in permitting the identifying officer (the Deputy Clerk of the Circuit Court for Criminal Causes) to read the records into evidence in the hearing before the trial judge. The objection was that "this is hearsay as far as this witness is concerned." The record wholly fails to show that any objection was made at the time to the admission of the records showing the convictions or to the fact that the hearing was before the judge alone. No objection on constitutional grounds was made to the application of Sec. 556.280 RSMo 1959, V.A.M.S., or to the court's action "in receiving evidence and in making a finding concerning defendant's alleged prior convictions, ou..ide of the hearing of the jury, and in failing to submit the fact question of defendant's alleged conviction, sentencing, and discharge, to the jury for its determination." Since no objection was timely made and no record preserved for review as to these constitutional issues, the assignment is overruled. State v. Griffin, Mo.Sup., 339 S.W.2d 803, 806(7).

While the constitutional issues attempted to be raised by defendant's motion for new trial are not before us, or for review on the record presented, similar issues concerning the application of Sec. 556.280 have been raised in other cases and have been ruled by this Court adversely to the defendant's contentions. State v. Morton, Mo.Sup., 338 S.W.2d 858, 861(3); State v. Griffin, supra; State v. Wolfe, Mo.Sup., 343 S.W.2d 10; State v. Williams, Mo.Sup., 343 S.W.2d 58; State v. Chamineak, Mo.Sup., 343 S.W.2d 153.

We have examined the record in regard to those matters as to which assignments of error are not required to be preserved in the motion for new trial and find no error in the record.

The judgment is affirmed.
All concur.